UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DUANE CAREY, | ) | CASE NO. 1:16-cv-1058 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| UBER TECHNOLOGIES, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Uber Technologies, Inc. ("defendant" or "Uber") to dismiss the complaint of plaintiff Duane Carey ("plaintiff" or "Carey"), compel arbitration, and strike plaintiff's class allegations. (Doc. No. 5 ["Mot."].) Plaintiff opposed the motion (Doc. No. 9 ["Opp'n"]), and defendant replied (Doc. No. 10 ["Reply"]). After the briefing was complete, defendant filed five (5) notices of supplemental authority in support of the motion. (Doc. Nos. 12, 13, 15, 16 and 17.) Plaintiff has not responded to any of defendant's notices.

For the reasons that follow, defendant's motion is granted.

**I. BACKGROUND**

Beyond general allegations concerning defendant's violation of federal and state wage and hour laws, the complaint is devoid of any specific information about the parties or plaintiff's relationship with Uber. Defendant has provided background information through the declaration of Michael Colman ("Colman"), attached to the motion. (Doc. No. 5-6 ["Colman Dec."].)

Plaintiff also attaches Colman's declaration to his opposition, in addition to his own affidavit. (Doc. No. 9-2 ["Carey Aff."].)

Uber is a technology company that connects drivers and riders through the use of the Uber App. (Colman Dec. ¶ 3.) Riders can select from several different Uber products depending upon what type of vehicle they desire for transportation. The uberX product connects riders to vehicles operated by private individuals as well as by transportation companies that desire to be part of the uberX product line. (*Id.* ¶ 4.) Rasier, one of Uber's wholly owned subsidiaries, contracts with independent transportation providers that desire to access the uberX product. (*Id.* ¶¶ 2, 4.)

Any driver who desires to utilize uberX must first enter into the Rasier Software Sublicense & Online Services Agreement. (*Id.* ¶ 7.) To do this, a driver must login to the Uber App with a unique username and password. After logging in, the driver may review the agreement by clicking a hyperlink presented on the screen within the Uber App. (*Id.* ¶ 9.) There is no time limit imposed for reviewing the agreement. When the driver is ready to accept the agreement, he must click "YES, I AGREE" once, and then again, to confirm agreement. (*Id.*) After the second confirmation, the agreement is sent to the driver's "driver portal" which is automatically created for each driver who signs up on the Uber App. (*Id.* ¶¶ 10, 15.) The driver can then access the agreement at any time through his driver portal by viewing it online, or by printing a copy. (*Id.* ¶¶ 10, 15.)

**A. Plaintiff's Relationship with Uber**

Using the Uber App, Carey signed up to use the uberX product on April 29, 2015, and accepted the November 10, 2014 Raiser Partner Agreement ("Agreement") the same day. (*Id*. ¶ 12 and Exhibit D.) The Agreement is attached as Exhibit C to Colman's declaration. (*Id*.) A screen shot of Carey's driver portal showing a link to the Agreement is attached as Exhibit E to Colman's declaration. (*Id*. ¶ 15.)

On June 5, 2015, Uber terminated Carey as a driver. (Carey Aff. ¶ 13.) According to Uber's records, Carey accepted the Agreement on the Uber App for a second time on August 12, 2015. (Colman Dec. ¶14 and Exhibit D.)

Carey brings this collective action under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA"), and Ohio's wage and hour laws. (Doc. No. 1 (Complaint ["Compl."]) ¶ 4.) Plaintiff claims that defendant failed to pay him, and similarly situated employees, overtime for hours worked over forty (40) hours in a work week in violation of the FLSA (*Id*. ¶¶ 67-71 (Count I)) and Ohio Rev. Code § 4111.03(A) (*Id*. ¶¶ 72-76 (Count II)). Plaintiff also alleges that defendant failed to pay him and similarly situated employees the minimum wage rate required by the FLSA (*Id*. ¶¶ 77-80 (Count III)) and Ohio Rev. Code § 4111.02 (*Id*. ¶¶ 81-84 (Count IV)).

**B. Agreement's Arbitration Provision**

The portions of the Agreement relevant to defendant's motion are the terms relating to arbitration. The Agreement contains an arbitration provision, which is prominently announced on the first page, along with notice of the opt-out option.

> **IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH**

>**THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.**

(Doc. No. 5-6 (Exhibit C) at 101 (bolding and capitalization in original.)

Section 15.3 of the Agreement is entitled "Arbitration Provision." Among other terms, the arbitration provision requires individual resolution of claims against Uber, and precludes class and collective actions, unless the driver opts out of the arbitration provision:

>IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber. It also precludes you from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else.

(*Id*. at 114.)

The Agreement urges drivers to conduct research, including consulting with an attorney, regarding the consequences of arbitration:

>**WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ABRITRATION. [sic] YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS - INCLUDING BUT NOT LIMITED TO AN ATTORNEY-REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.**

(*Id*. at 115 (bolding and capitalization in original).)

The arbitration provision also contains a conspicuous opt-out provision, which informs drivers that arbitration is not a condition the driver's relationship with Uber, and provides specific instructions for opting out of the arbitration provision:

> **viii. Your Right To Opt Out Of Arbitration.**
>
> **Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (*e.g*, UPS, Federal Express, etc.), or by hand delivery to:**
>
> > **Legal**
> > **Rasier, LLC**
> > **1455 Market St., Ste. 400**
> > **San Francisco CA 94103**
>
> **In order to be effective, the letter under option (2) must clearly indicate your intent to opt out of this Arbitration Provision, and must be dated and signed. The envelope containing the signed letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by you. Your writing opting out of this Arbitration Provision, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company. Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

(*Id*. at 118-19 (bolding in original).)

## II. DISCUSSION

**A. Standard of Review**

A motion to compel arbitration and dismiss the case is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.,* which provides that "'[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition' for an order compelling arbitration." *Wallace v. Red Bull Distrib. Co.*, 958 F. Supp. 2d 811, 816 (N.D. Ohio 2013) (quoting 9 U.S.C. § 4). "[T]he FAA preempts state laws and policies regarding arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)); *see also Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("[T]he FAA preempts state laws applicable *only* to arbitration provisions.") (quotation marks and citation omitted) (emphasis in original).

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration if he has not agreed to do so. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) (citation omitted) "Before compelling arbitration, a court must determine whether a dispute is arbitrable, 'meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement.'" *Id.* at 502 (quoting *Javitch v. First Union Securities, Inc*., 315 F.3d 619, 624 (6th Cir. 2003) (further citations omitted)).

**B. The Agreement Governs Carey's Relationship with Uber**

    **1. Choice of Law**

Whether the parties agreed to arbitrate is a matter of contract, which is matter of state law. *Fazio*, 340 F.3d at 393 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). The applicable state law is determined by using the choice-of-law rules of the forum state. *Wallace*, 958 F. Supp. 2d at 818 (citing *Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 994 (9th Cir. 2010)). "Under Ohio law, 'the governing law specified in a contract is applied unless the chosen state lacks a substantial relationship to the parties or the transaction or unless the application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest in the transaction.'" *Id*. (quoting *Cincinnati Gas & Elec. Co. v. Westinghouse Elec. Corp.,* 165 F.3d 26 (Table), at *2 (6th Cir. 1998) (citing *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.,* 453 N.E.2d 683, 686 (Ohio 1983))).

    **2. Carey Entered the Agreement with Uber**

Defendant has offered evidence showing that plaintiff accepted the Agreement on April 29, 2015. Carey confirms that he completed an application to drive for Uber on April 29, 2015, using his mobile phone. (Carey Aff. ¶¶ 2, 3.) Plaintiff does not dispute defendant's evidence that he would have been unable to use the uberX product without entering into a Rasier agreement, or that he clicked on "I AGREE" twice in order to complete the process to access the uberX product. Carey does aver, however, that he was not required view the Agreement before using Uber's products, and was never required to access his driver portal. (*Id*. ¶¶ 8, 12.)

Carey is a resident of Ohio, and there is no evidence in the record that he accepted the Agreement, or worked as a driver for Uber, anywhere but in Ohio. The Agreement provides generally that California law controls. (Doc. No. 5-6 at 113 (¶ 15.1).) A choice-of-law analysis, however, is not necessary because courts in both Ohio and California have found that clicking through relevant screens, as plaintiff did here in order to sign up to use the uberX product, "is an acceptable method to manifest assent to the terms of an agreement[]" even where disputed terms are contained in a hyperlink.[1] *See Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 217 (Ohio Ct. App. 2015) (clicking "I agree" resulted in acceptance of agreement terms, including arbitration provisions) (citations omitted). "This is so even where the user has failed to actually review the terms of use prior to manifesting assent." *Id.* at 217-18 (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838 (S.D.N.Y. 2012); *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 910-12 (N.D. Cal. 2011)).[2]

Thus the Court finds that Carey accepted the Agreement and that it governs his relationship with Uber.

---

[1] Carey incorrectly characterizes the Agreement as a "browsewrap" agreement, rather than a "clickwrap" agreement. *See Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013).

[2] The other elements of contract formation are not in dispute. *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926, 935 (Ohio Ct. App. 2007) (elements of contract formation are offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit and/or detriment), a manifestation of mutual assent, and legality of object and of consideration) (citations omitted); *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) ("Under California law, in order to form a valid and enforceable contract, it is essential that there be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) a sufficient consideration.") (citations omitted).

**C. The Delegation Clause is Valid**

Defendant maintains that the Court must compel arbitration and dismiss this case because the Agreement's arbitration provision specifically delegates gateway issues of arbitrability to the arbitrator, including the determination of the enforceability, revocability, or validity of the arbitration provision. "'[T]he question [of] who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?'" *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 485 F. App'x 821, 823 (6th Cir. 2012) (internal quotation marks omitted) (quoting *First Options of Chicago, Inc.,* 514 U.S. at 943) (emphasis in original).

While the parties may agree to delegate authority to the arbitrator to decide gateway issues of arbitrability, "the presumption in favor of arbitration does not apply to delegation clauses." *Bruster v. Uber Techs. Inc.*, 188 F. Supp. 3d 658, 662 (N.D. Ohio 2016), *reconsideration denied,* No. 15-CV-2653, 2016 WL 4086786 (N.D. Ohio Aug. 2, 2016) (citing *Rent–A–Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 69–70, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (holding that delegation of authority to arbitrator to determine the enforceability and scope of arbitration agreement was valid under FAA)).

**1. Delegation clause is clear and unmistakable**

"'Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'" *Bruster*, 188 F.Supp.3d at 662 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

> The delegation provision at issue in the Agreement provides that:
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**
>
> *Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.*

(Colman Dec. at 115-16 (bolding in original, italics added).)

This Court finds, as have numerous other courts considering identical or nearly identical language, the language of the Agreement's delegation provision clearly and unmistakably evinces the parties' intent to submit *all* issues under the Agreement, including issues of arbitrability, to the arbitrator. *Bruster*, 188 F. Supp. 3d at 663–64 (finding an identical delegation provision valid); *Mohamed v. Uber Techs., Inc.*, No. 15-16178, ---F.3d---, 2016 WL 7470557, at *3-4 (9th Cir. Dec. 21, 2016) (the provision clearly and unmistakably delegates threshold issues of arbitrability to the arbitrator); *Lamour v. Uber Techs., Inc.*, No. 1:16-CIV-21449, 2017 WL 878712, at *13 (S.D. Fla. Mar. 1, 2017) (citing *Mohamed*, 2016 WL 7470557, at *3) (every court to consider this delegation provision has held it is "clear and unmistakable" that the parties agreed to delegate the question of arbitrability to the arbitrator); *Zawada v. Uber Techs., Inc.*, No. 16-CV-11334, 2016 WL 7439198, at *4 (E.D. Mich. Dec. 27, 2016) ("The Ninth Circuit's conclusion [in *Mohamed*]—that the delegation provision properly delegated questions of arbitrability to an arbitrator—is consistent with every other district court to reach the issue when

examining the same or substantially similar Raiser agreements since *Mohamed*.") (collecting cases); *Gunn v. Uber Techs., Inc.*, No. 116CV01668SEBMJD, 2017 WL 386816, at *3 (S.D. Ind. Jan. 27, 2017).

This, however, does not end the analysis. Even if the delegation provision clearly and unmistakably manifests the parties' intent to delegate the issue of arbitrability to the arbitrator, the Court may nevertheless refuse to enforce the delegation provision if it is unconscionable. *Zawada,* 2016 WL 7439198, at *5 (citing *Rent-A-Ctr*, 561 U.S. at 72-74); *Bruster*, 188 F. Supp. 3d at 664.

Carey contends the defendant's motion should be denied because the "arbitration agreement" is unconscionable, but does not specifically challenge the delegation provision. Arguably, this ends the analysis. *Wynn v. Five Star Quality Care Trust*, No. 3:13-CV-01338, 2014 WL 2560603, at *7 (M.D. Tenn. June 5, 2014) ("The Supreme Court has expressly found that delegation clauses must be enforced, absent a valid challenge specific to the delegation clause—as opposed to a challenge to the enforceability of the Agreement as a whole.") (citing *Rent-A-Center,* 561 U.S. at 70-71) (additional citations omitted); *see also Flint v. Bank of Am., N.A.*, No. 15-13006, 2016 WL 1444505, at *6 (E.D. Mich. Apr. 13, 2016) (if plaintiff challenges the arbitration agreement as a whole, rather than the delegation provision specifically, then the delegation provision remains enforceable and the issue of unconscionability is reserved for arbitration). Nevertheless, in an abundance of caution, the Court will analyze the unconscionability of the delegation provision.

### 2. Ohio law governs unconscionability analysis of the delegation provision

Whether the delegation provision is unconscionable is a question of state law. The Agreement generally provides that California law applies, but challenges to the validity of an arbitration provision are considered independently from the rest of the Agreement. *Bruster*, 188 F. Supp. 3d at 662 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)). "As a matter of substantive federal arbitration law, an arbitration provision is severable from the rest of the remainder of the contract. . . . *Rent-A-Center* extended the separability rule [] to delegation provisions within arbitration agreements." *Zawada*, 2016 WL 7439198, at *5 (citations and internal quotation marks omitted); *Bruster*, 188 F. Supp. 3d at 662 (citation omitted).

Neither the arbitration provision nor the delegation provision contain a choice-of-law clause. "Absent an effective choice of law provision, Ohio courts apply the law of the state with the most significant relationship to the contract." *Bruster*, 188 F. Supp. 3d at 663 (quoting *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 623 (6th Cir. 2008) (further citation omitted)).

Plaintiff is a citizen of Ohio and resident of Cuyahoga County, Ohio. There is no evidence in the record that plaintiff entered into the Agreement, or provided transportation services using the Uber App, anywhere but in Ohio. Thus, Ohio has the most significant relationship to the contract and the Court will apply Ohio law to plaintiff's argument that the delegation provision is unconscionable. *See Bruster*, 188 F. Supp. at 664; *Zawada*, 2016 WL 7439198, at *6 (the arbitration provision is severable from the rest of the contract and does not

contain a choice of law provision, thus Michigan's choice-of-law rules apply). Both parties use Ohio law in arguing their respective positions regarding unconscionability.

### 3. The delegation provision is not unconscionable

The burden of establishing unconscionability is on the plaintiff. *Jean v. The Stanley Works*, No. 1:04CV1904, 2008 WL 2778849, at *7 (N.D. Ohio July 14, 2008) (report and recommendation adopted). In order for a contract provision to be unconscionable under Ohio law, it must be both procedurally and substantively unconscionable. *Bruster*, 188 F. Supp. 3d at 664 (citing *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017 (6th Cir. 2005)). With respect to the first-prong of unconscionability analysis:

> [p]rocedural unconscionability exists where the circumstances surrounding a party to the contract were such that no voluntary meeting of the minds was possible. *Jeffrey,* 758 N.E.2d at 1181. Ohio courts look to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Cross v. Carnes,* 132 Ohio App. 3d 157, 169, 724 N.E.2d 828 (1998). Further, it is not enough that the parties have unequal bargaining power, a vast disparity is required. *Faber v. Menard, Inc.,* 367 F.3d 1048, 1054 (8th Cir. 2004).

*Scovill*, 425 F.3d at 1017-18.

Carey argues that the delegation provision is procedurally unconscionable for a number of reasons. First, he claims he was required to click on "I AGREE" after reviewing the Agreement and was never informed that he was agreeing to an enforceable contract or given a meaningful choice about whether to enter the Agreement before driving for Uber. Second he contends that he had no opportunity to negotiate or alter the terms of the Agreement. (Carey Aff. ¶¶ 9, 10.) Finally, he maintains that he only possesses a high school education and could not be expected to know or understand the implications and consequences of arbitration, and that the

only thing he did understand was "that he would not be able to work for Uber until he clicked 'I AGREE.'" (Opp'n at 143-44.)

Plaintiff's arguments are not supported by the undisputed record and are otherwise unavailing. Uber drafted the Agreement, and it is true that plaintiff could not access the uberX product without clicking "I AGREE." After clicking "I AGREE," however, plaintiff had the ability to unilaterally alter the written terms of the Agreement by eliminating the arbitration provision, including the delegation provision. Even a cursory examination of the Agreement establishes that it repeatedly and conspicuously informs a driver that he may "opt out" of the arbitration provision (which contains the delegation provision) if he chooses to do so, that arbitration is not a condition of utilizing Uber's products, and that the driver will not be subject to retaliation if he chooses to opt out. Finally, the Agreement provides the driver with specific instructions regarding the actions required to opt out, which could be as simple as sending an email. Carey had the unilateral power alter the terms of the Agreement and opt out of the arbitration provision, including the delegation provision, in its entirety, and had sufficient time (30 days) to consider his options. Carey, however, did not opt out of either of the Agreements that he accepted. (Colman Dec. ¶¶ 13, 14.)

Thus, the Court concludes that the delegation provision is not procedurally unconscionable under Ohio law.[3] *See Scovill*, 425 F.3d at 1017-18; *Bruster*, 188 F. Supp. 3d at 664; *Ranazzi*, 46 N.E.3d at 219 ("Under Ohio law, unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.") (internal quotation marks and citations omitted).

Under Ohio law, a contract provision is unconscionable only if it is both procedurally and substantively unconscionable. Because the Court concludes that the arbitration and delegation provisions are not procedurally unconscionable, the Court will not address the issue of substantive unconscionability. That said, the Court notes that the opt-out provision also protects the arbitration provision from a finding of invalidity and substantive unconscionability based on the class-action waiver. *See Zawada*, 2016 WL 7439198, at *9-10 (citations omitted).

Having determined that the delegation provision is not unconscionable and valid, it is not for the Court to decide the merits of plaintiff's claims or whether the arbitration provision is enforceable with respect to plaintiff's claims. The parties have delegated those issues to the arbitrator, not the Court, to decide. Thus, defendant's motion to compel arbitration is granted.

---

[3] The result is the same applying California law. *See Bruster v. Uber Techs. Inc.*, No. 15-CV-2653, 2016 WL 4086786, at *2 (N.D. Ohio Aug. 2, 2016) (citations omitted). "'A finding of unconscionability requires a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results.'" *Wallace*, 958 F. Supp. 2d at 819 (applying California law) (quoting *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 340, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)); *see also Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 839-42 (N.D. Cal. 2012) (citations omitted). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice[,] and [s]urprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Wallace*, 958 F. Supp. 2d at 821 (internal quotation marks omitted) (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486, 186 Cal. Rptr. 114, 122 (Ct. App. 1982)). Carey had a meaningful choice as to whether he would be subject to arbitration because he could have unilaterally opted out of the arbitration provision. Moreover, the arbitration provision and the opt-out alternative were not hidden in the Agreement, but appeared in bold text in multiple locations in the Agreement.

**D. Motion to Strike Class Allegations**

The arbitration provision precludes class and collective actions. (*See* Doc. No. 5-6 (Exhibit C) at 114.) Defendant argues that the Agreement's arbitration provision regarding class and collective action waivers are *enforceable* under the law and should be stricken. (Mot. at 59-61 (citations omitted).) Plaintiff's opposition does not address the motion to strike.

The delegation provision provides that all disputes without limitation, "including the *enforceability*, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision[,] . . . shall be decided by an Arbitrator and not by a court or judge." The Court has found that the parties clearly and manifestly agreed to delegate issues of enforceability of the arbitration provision to the arbitrator. Thus the enforceability of the Agreement's class and collective action waiver must be addressed by the arbitrator. *See Gunn*, 2017 WL 386816, at *4 ("In this case, the parties entered into a valid agreement to delegate to the arbitrator questions of arbitrability ["disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision ... shall be decided by an Arbitrator and not by a court or judge"]. Accordingly, the question of the enforceability of the collective action waiver must be resolved by the arbitrator."); *see also Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 1738017, at *7 (N.D. Cal. Apr. 8, 2015) (defendant's motion to enforce the arbitration agreement's class action waiver, in light of the court's ruling on the delegation clause, is an issue for the arbitrator to address); *cf; Rimel v. Uber Techs., Inc.*, No. 615CV2191ORL41KRS, 2016 WL 6246812, at *8 (M.D. Fla. Aug. 4, 2016) (citations omitted). (striking class allegations finding that the court may resolve the issue of whether the class action waiver is enforceable,

16

rather than deferring this issue to the arbitrator pursuant to a valid delegation clause) (citing *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005)).

Because all of plaintiff's claims have been compelled to arbitration, it is appropriate for the Court to dismiss, rather than stay, this case. *Wallace*, 958 F. Supp. 2d at 816 (citing *Hensel v. Cargill, Inc.,* No. 99–3199, 198 F.3d 245 (Table), 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999)) (further citation omitted).

### III. CONCLUSION

For all of the foregoing reasons, defendant's motion to compel arbitration and dismiss this case is granted. Because the issue of the enforceability of the arbitration's class and collective action waiver has also been compelled to the arbitrator, defendant's motion to strike plaintiff's class allegations is moot.

**IT IS SO ORDERED**.

Dated: March 27, 2017

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**